May it please the court, I'm Jeff Rosenzweig from Little Rock and I was appointed by the District Court to represent Mrs. Espejo on appeal. I did not try the case. The court appreciates your willingness to accept the assignment. Thank you, Your Honor. Mrs. Espejo essentially was accused of embezzling from her employer a group of physicians called the acronym PMSI. And her defense was that she wasn't stealing, rather she was assisting the president of PMSI, Dr. Sanderson, in essentially being able to spend money without his wife knowing about it. And by buying things for him and then being reimbursed through PMSI. In approximately 2010, PMSI decided, somebody at PMSI decided there was some discrepancy there and confronted Mrs. Espejo. And she called the lawyer, accountants are called in, lawyers are called in, law enforcement is called in, and she asks through her lawyer that the various documents, QuickBooks computer, QuickBooks programs, other documents be preserved, that they will exonerate her. Anyway, for some reason, they didn't. They were not. They were gotten rid of. They disappeared. And the question is, can she be allowed to bring this up in her criminal trial and in what context? And the basic question is this, from a logical standpoint, if you're the victim of a theft, of an embezzlement, as PMSI asserted, why in the world would you get rid of the various documents? Now the problem is, of course, that the first iteration of this went through essentially the Youngblood matter. And, of course, there was apparently no indication that the government was involved in this. However, they were in the possession of these documents, which Mrs. Espejo said would exonerate her, were in the possession of PMSI, and they disappeared. The problem where the district court went too far is in forbidding the defense from alleging or even asking the relevant people at PMSI, why did you get rid of these documents? Why did you destroy them? And they were allowed only to argue or to point out that the documents weren't there. But the documents were in the possession, had been in the possession of PMSI. There was a specific request that these documents be preserved through Denise Hoggard, who was Mrs. Espejo's lawyer at the time, communicating with PMSI's lawyer, Mr. Boguslawski. So what was the theory of defense? How would these documents have helped? These documents would have helped because it would show that Mrs. Espejo was not . . . I'm sorry, not the documents. The testimony about why the documents were missing or gone. Well, it would have helped because it would have allowed them, allowed the defense to argue and present a case that Mrs. Espejo's testimony that she was merely assisting Dr. Sanderson in hiding expenses from his wife and wasn't stealing for her own benefit, and that these documents, which were in their possession and control, had disappeared. In other words, that they . . . Well, she could argue that, though, right? No, she was only able to argue that they disappeared, not that PMSI had anything to do with it. Not even being allowed to ask Dr. Sanderson . . . Well, how else would they have disappeared if PMSI didn't have anything to do with it? Well, the question is, there's a significant difference between something accidentally being hauled off to the shredder and being intentionally . . . Well, that's what I'm trying to get at. Suppose somebody had testified . . . You mean she wanted to put on a witness who would say, I intentionally destroyed these documents? She wanted to be able to ask Dr. Sanderson, did you intentionally destroy these documents? Suppose he said yes. How does that help you? Well, because that corroborates her theory that, in fact . . . That he was hiding it from the wife? Just hiding it from the wife. Not you, but was there an offer proof about what he would have said? Well, there was not a specific offer, but the point is not even being allowed to ask. In other words, maybe if they had asked and Dr. Sanderson said no, but said it in a shifty-eyed way or otherwise appeared that he was trying to hide something, and then you can be able to argue, well, you saw Dr. Sanderson there, and he hesitated. Not credible, not credible. Yes, that type of thing. Is there any factual basis behind that question? Well, we do know that records existed. We do know that records existed. But specifically that Dr. Sanderson destroyed them? Well, he would have been the one . . . Number one, he was the president of PMSI at the relevant time. He worked there. I mean, they worked for him. There were settlement statements, in other words, the things that go out, which the paper copies would have disappeared. The invoices that would have reflected the purchases. In other words, Dr. Sanderson, this invoice is for an iPad or this invoice is for whatever. Is that your iPad? I mean, there are plenty of things that could have been asked, but her defense was . . . I understand that, but my question is, is there any factual basis to believe that Dr. Sanderson is the person who destroyed the documents? They were in the possession of and the control of a corporation of which he was the president. Of which there were lots of other people. There were other people there. But, I mean, PMSI doesn't necessarily want the scandal, even if it's just for Dr. Sanderson. And the problem is, I mean, you should be . . . A trial is a search for the truth. You should be allowed to ask the prosecuting witness, for lack of a better term. You should be allowed to ask Dr. Sanderson how these documents disappeared. Did you order this? The counsel was able to ask about the use of funds. Ask Dr. Sanderson about where the funds were going and what they were used for, right? And this was all inquired about whether he was hiding money from the wife. There was cross-examination about that. Yes, but these . . . Ms. Espejo believed and asserted that these documents would have . . . That these invoices, these settlement statements would have corroborated, buttressed her theory of the case, her defense. And that she should have been allowed to ask and be able to make the argument and let the chips fall where they may, as far as the jury is concerned. Who was the witness of whom these questions would have been asked? Well, you would have asked anyone they put up from PMSI, but including Dr. Sanderson, specifically. Since it's his . . . I mean, her defense was that it's his machinations that she was assisting him in, and that this wasn't any violation of the law. She was just merely trying to help him in his domestic life. I assume the government presented some records indicating that she got some . . . Well, yes. I mean, they presented evidence that her bank account . . . Monies flowed into her bank account. And the question is, of course, why did they flow into her bank account? Were they merely just reimbursing her? She says, I was just being reimbursed for going out and buying things for Dr. Sanderson. And I wasn't stealing. And this was just Dr. Sanderson was wanting to run this stuff through the practice. I just worked there. It's Dr. Sanderson's money, not mine. That's the argument. And should be allowed to ask that. I mean, this was . . . we submit an improper restriction on the right to present a defense. It was clearly relevant under the relevance test. It was not harmless error under the circumstances of this case. And we would ask . . . I'm going to reserve time for rebuttal, of course, but we would ask that the court reverse the convictions and, of course, remand it for a new trial. Thank you. Very well. Thank you for your argument. Ms. Dempsey, we'll hear from you. May it please the court. My name is Jamie Dempsey and represent the United States. The district court correctly found that any alleged destruction of documents evidence was not relevant to the crime of wire fraud that was charged here because it doesn't tend to prove or disprove wire fraud. The district court also correctly determined that any minimal relevance of the alleged destruction of documents to Espayo's defense theory was outweighed by unfair prejudice, misleading the jury, confusion of the issues, and waste of time. Espayo was not prevented from presenting a complete defense because she was allowed to examine witnesses on the missing documents, the QuickBooks file, and the failure of PMSI to preserve her computer. And because of the substantial evidence of Espayo's guilt at trial, even if the court committed error, its error had little impact on the verdict. And, Your Honors, I think you all kind of got to the heart of the matter here in that at trial, defense counsel had an ex parte hearing with the court in which he conceded, I don't think I have enough information to say Dr. Sanderson destroyed the settlement statements. The only thing I'm capable of saying is they are missing. There is no witness who can say who ordered the destruction of documents. And so there is no good faith basis for it in the record. Well, wait a minute. How do you know there's no witness who somebody can order? If they find the right person, somebody had to cause them to be shredded. That's a fair point, Your Honor. However, in this case, there was a two-day evidentiary hearing regarding this alleged destruction of documents, and the defense could not present a witness who could say who ordered the destruction. Or if they could, it would have been the office manager subsequent to Espayo, Linda Reynolds,  so no one, they did not present a witness who could say, no one could claim Dr. Sanderson was responsible for the destruction of the documents. So why would it be so confusing to the jury to simply allow Dr. Sanders to be asked the question, did you destroy the documents? Well, Your Honor, for one thing, it's not really relevant to the crime that's charged. It's not a question that the jury has to decide to determine the law.  And in that case, it would confuse the issues because it would devolve into a mini-trial, like this court observed in the Frederick case, where the defendant— Why? Because he probably would have said, no, I didn't. Why is that going to be a mini-trial? Because they're allowed to make an inference about something that they have zero evidence ever occurred. And so what they were allowed to do is ask Dr. Sanderson and every other doctor— They were missing, correct. And he said they disappeared when she left. He was asked the question and he responded about whether they were missing, and he said they disappeared when she left. The other doctors were also asked about the documents, and they couldn't recall. And, I mean, in all, nine witnesses testified about these documents at trial. So she was able to present a complete defense regarding the fact that these documents were missing, that her computer was not preserved by PMSI. Her lawyer testified at trial that she asked for these documents and they weren't preserved. And the 2010 settlement statements were preserved, and those were also presented at trial. I mean, those were preserved. I don't think it sounded like Sanderson was asked about this and did answer. He was asked whether he had the documents at trial, I believe was the way the question was asked. And he said, no, they disappeared as they had left. He was asked whether he still had the documents, you mean? Correct. But they weren't allowed to then ask, how did they disappear? Correct. And the court properly found— Why do you say it wouldn't be relevant to the case? Suppose that he had ordered them destroyed to— He was asked about that, Your Honor. And he was actually called in rebuttal after Espejo testified at length about these payments she claimed she was making for him, and he was called in rebuttal to refute that. But the issue with these documents is that what they would have shown is how money got into the account, not how money got out of the account. And the charge is wire fraud. So it has nothing to do with how she got this money out. It is only relevant to this claim defense that these were reimbursements. And she was allowed to present significant evidence on this theory that— accusing Dr. Sanderson, basically, of authorizing these payments out. And the other problem with that theory is that, for example, in 2010, she transferred out more money than Dr. Sanderson put in. And so the bank records undermine this defense. And as I stated before, she was allowed to argue that she was assisting Dr. Sanderson in this way. She elicited that testimony from— And furthermore, the substantial evidence of her guilt at trial otherwise makes this— the error any—even though the district court did not err, any error would be harmless because of that substantial evidence of her guilt. As in the Summage case where there was so much— the strength of the evidence against the defendant was such that even if the rulings were erroneous, it would have little effect on the verdict. If the panel has no further questions, I'll submit my case. You may. Very well. Thank you for your argument. Mr. Rosenzweig? Thank you, Your Honor. We'll hear from you on rebuttal. Just very briefly, Your Honor. The problem is, of course, the heart of the defense is that she was assisting Dr. Sanderson. And merely saying, oh, the records aren't there, doesn't get you where you need to go and doesn't comport with the constitutional right to present a defense. If you can't ask, Dr. Sanderson, did you destroy the records? Why did you destroy the records? Or do you have any decent explanation about why the records aren't there if you didn't destroy them? I mean, there are all sorts of permutations of a question that can be asked. And when we do know there was a specific request at the outset of all this, there was a specific request for the preservation of the records. And, I mean, it would be only logical, if you think you have been stolen from, that you wouldn't put these in a box or you would put these in a separate place. You would segregate them in some way and preserve them. They may be needed for a civil trial. They may be needed for a criminal trial. You don't just throw them in with 10-year-old records of people having the flu that you get rid of after a certain time. In other words, there is a reason why you preserve it. What about the point that the records would only show how the money went in and not how the money went out? Well, the records, I mean, there were also, according to Mrs. Spejo, supporting invoices. In other words, if she went to Walmart, if she went to a department store, if she went somewhere, that those paper records would also be there and that she could verify that. If there is an invoice, there may be a serial number for the particular purchase that could be, say, who ended up with it. I mean, there are plenty of possibilities. There was also, of course, the second QuickBooks program in which he asserted essentially the real records were in and not the formal records. That disappears too. The non-Internet computer that that was hooked up to apparently disappeared as well. And so there is substantial basis for one's inference that this was not some sort of accidental happenstance, that this was at the direction of someone and to not being allowed to ask the relevant person is we submit a fatal error under the facts of this case. And again, I ask that the court reverse and remain. Very well. Thank you, sir. I appreciate the arguments from both counsel. The case is submitted and the court will file an opinion in due course.